MOBILE & O. R. CO. (KETCHUM v.). See Case No. 7,737.

MOBILE LIFE INS. CO. (BERRY v.). See Case No. 1,358.

MOBILE SAV. BANK (WILLIAMS v.). See Case No. 17,729.

MOCKBEE (GODDARD v.). See Case No. 5,493.

## Case No. 9,685.

### The M. M. HAMILTON.

[1 Hask. 489.] [1]

District Court, D. Maine. Feb., 1873.

COLLISION—WIND FREE—FACTS TO BE STATED IN LIBEL—LIGHTS—LOOKOUT.

1. A vessel sailing with the wind free must take proper measures to avoid collision with a vessel close-hauled. The latter must hold her course.
[See The Argus, Case No. 521.]

2. In cases of collision, a libel should narrate the particular facts and circumstances that cause the disaster; and an omission to so allege a material fact is strong evidence of its falsity.

3. A neglect to show lights and have a lookout as required by law prejudice the offending party with courts of admiralty.

In admiralty. Libel in rem in a cause of collision, heard on libel, claim, answer and proofs.

Sewall C. Strout and Bion Bradbury, for libellant.

Thomas B. Reed, for respondents.

FOX, District Judge. This libel is promoted by the master in behalf of himself and the owners of the schooner Addison Gilbert, of Gloucester, against the sloop M. M. Hamilton of Portland, to recover the value of the schooner and her outfits, totally lost in a

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

collision between these two vessels off the entrance of Portsmouth harbor on the morning of the 7th of January, between one and two o'clock. About half past twelve, the schooner left her wharf in Portsmouth, destined for the shore fishery, without any lights. She ran down by Fort Constitution, and after one o'clock, a watch of two men was set, and orders were then given by the master to put up the lights. Lee was ordered on the lookout as he swears, and Boon to the wheel. The master went below. Russell went to the forecastle for the lights, lighted them, had the green light fixed, he says, in its proper place in the starboard rigging, was in the act of climbing into the port rigging with the red light, when he perceived a vessel on their lee bow, standing towards them about fifty yards off. He dropped the red light and ran aft shouting to the vessel, which was the sloop M. M. Hamilton, to keep off; but instead of complying, as he says, she luffed up, and struck them on the port side just forward of the main rigging.

It is admitted that the wind was from northwest to northwest by north, that it was a clear cold night, the moon having set just after midnight, and that the course of the schooner, after she passed Fort Constitution, was nearly south. The lookout Lee says, that when he first saw the sloop she was making a westerly course, but that in a very short time, he again looked, and she was then heading northeast, about two points on the schooner's weather bow; that he did not notice her when she tacked, his attention being attracted by the movements of Russell in putting up the lights, nor did he give any notice to the man at the helm, that the sloop was near by. Boon, who was at the helm, says that he discovered the sloop, she being on the starboard bow, making towards their starboard cathead and standing north-northeast, the schooner standing south; that he at once called the captain from below, who came immediately on deck, without hat or boots, and put the helm to port, which caused the schooner to luff.

The sloop is of 110 tons, was from Boston bound to Portland, loaded with railroad iron, and was making for Portsmouth for a harbor, being badly covered with ice; after she had reached near to Whale Back Island, she stood to the westward, and when about half way across the channel, discovered the schooner nearly up to Fort Constitution without lights, but the mate of sloop, who was then acting as master, the captain not being on board, supposed the schooner was then standing out to sea. The distance from the fort to Whale Back Island is about one mile, and it is about half that distance across from the island to the west shore. The sloop ran out her westerly tack as far as it was deemed prudent, and then stood about on the easterly tack, and laid her course about north-northeast. The mate says, he saw the

schooner after the sloop tacked about three points on the sloop's lee bow, and if both vessels had held their course, they would have passed 100 yards apart in safety; that the next he saw was the schooner's bowsprit pass by the sloop's to windward, and thereupon his lookout cried, "hard up," which he did as soon as possible; that the two vessels immediately came together, the sloop not having a headway of more than two knots.

It is not controverted by the libellant that the schooner was sailing with the wind free, and that the sloop was close-hauled, and that by the 12th article of the rules adopted by act of congress in 1864 [13 Stat. 60] it was the schooner's duty to take proper measures to avoid collision, and the sloop was bound to keep her course. It is therefore attempted to establish on the part of the libellant, that the schooner was justified in luffing, and that instead of holding her course the sloop also luffed, and by so doing occasioned the disaster. There is no dispute as to the law of the case, and the only question of fact in controversy is whether the sloop luffed, and upon this there is the usual conflict. All of the crew of the schooner, who were on deck at the time, admit that she luffed, but they assert that the sloop also luffed, which latter assertion is denied by all of the crew of the sloop.

By the 23d admiralty rule of the supreme court of the United States, it is required that the libel shall pronounce and articulate in distinct articles the various allegations of facts upon which the libellant relies in support of his suit, so that the defendant may be enabled to answer distinctly and separately the several matters contained in each article.

In Quinn v. The Transport [Case No. 11,-516], an exception was taken to the libel, and the court, Benedict, J., says: "The libellant in a collision case has contented himself with simply stating a bare cause of action, and has omitted the full and frank narrative of the material circumstances attending the accident, which the general practice of the admiralty requires in cases of this description. * * * I am unable to see why the circumstances as thus seen should not be set forth for the information of the court, and to save labor in proving facts about which there may be no dispute, as well in this as in any case. The reason of the rule, which is applied in all ordinary cases of collision, would seem to exist in full force in these triangular cases, in which above all others the need of a full statement of the facts is felt. To make these cases exceptions to the general rule as claimed would be to permit the parties to come to trial without any preliminary statement from either party, which would be of any assistance to the court, or would apprise the parties most in interest of the facts which they are called on to meet."

In the present case at the time and locality of the collision the libel states "that there was a fresh breeze from the northwest," the schooner's course being south; that "the man at the wheel, who was on the lookout," discovered a strange sail about three points on the weather bow of the schooner, approaching in a direction north by east on the wind about 150 yards distant, and southwesterly from the schooner; that immediately the schooner's wheel was put hard to port to bring her up into the wind and allow the approaching vessel to pass to leeward; that the schooner's helm remained in that position until the collision, and that the vessel was the sloop, which struck the schooner forward of the main rigging, cutting her down so that she filled; that after the sloop was first seen by the schooner, it was impossible for the schooner to have done anything more than she did to avoid the collision, the night being clear; that the schooner could have been seen by those on board the sloop at a sufficient distance for her to have avoided the collision if any one had been at the wheel of said sloop, or proper attempt had been made to keep her clear, said sloop being on the wind; that the collision was caused wholly by the negligence and want of care of the sloop.

This is the whole statement contained in the libel relating to the collision and its cause, and it is quite extraordinary that while it does assert that the schooner's helm was put to port, and she came up into the wind, it no where charges that the sloop did any thing of the kind. It is not any where suggested (as the learned counsel frankly admitted in reply to an inquiry from the court) that the sloop luffed or changed her course in any degree; on the contrary, the plain inference from the charge against her as it stands in the libel is, that she did nothing but hold her course, as the allegation is "that the sloop could have avoided the collision, if any one had been at the wheel of the sloop, or proper attempts made to keep her clear." The negligence and fault of the sloop is, that no one was at the wheel to change her course, and instead of her crossing and getting in the way of the schooner, the complaint is, that she took no steps to get out of her way. Her alleged sin is that of omission, instead of commission, as is now attempted to be maintained.

In my opinion, no one acquainted with navigation could possibly gather from this libel, that the cause of complaint was the sloop's luffing; on the contrary, I think it would be understood that the claim was, that the sloop was bound to take measures to keep out of the way of the schooner, as much as the schooner was to keep out of the way of the sloop; that the schooner did her part by luffing, but that the sloop took no measures to accomplish it. The theory on which this libel was drawn, if the libellant had any clear notion on the subject, I think was, that when the vessels came in sight of each other, they were approaching so nearly end on,

that it was the duty of the sloop to port and not to hold her course. The averment in the libel, that the schooner was sailing south and the sloop northeast within one point would tend to confirm this view, as under those courses, it may be that each vessel is bound ordinarily to keep out of the other's way; and I apprehend that this idea was not abandoned, until it was found that the direction of the sloop was not such as to render obligatory upon her the duty of changing her course, and then the attempt was made to charge the sloop, as is now claimed.

The libel should contain a narrative of the facts and circumstances attending the collision for the information of the court, as well as of the adverse party. The respondents must be given to understand the facts which they are called upon to answer; and certainly they were not in this libel required to justify the luffing of the sloop at the time of the collision. I consider the entire omission from the libel of any suggestion, that the sloop by luffing occasioned the collision, most cogent and conclusive evidence, that when this libel was drawn by his proctor, and the facts as they occurred here related by the master and stated in the libel as the material circumstances attending the accident, and by which the sloop had become accountable, he must have known that the sloop did not luff; for if she had so manifestly violated the rules of navigation, the libel would have openly explicitly charged her with so doing, as the ground for her liability.

Between these two vessels, I hold the responsibility of avoiding the danger rested upon the schooner. I have no question, if the master when he came on deck, had held his course instead of luffing, the vessels would have passed without injury. The course adopted by the schooner was taken too late to escape the disaster. It contributed to or rather occasioned it; and the sloop is not shown to have been in any way negligent or managed so as to render her accountable.

Before concluding this opinion, the court feels called upon to remark upon the gross negligence on the part of the schooner in not complying with the provisions of law, both as to lights and a competent watch. Her lights were not brought on deck until she was well past the fort, and then only one of them had been in place before the collision. It may be that Pat Lee had been assigned to duty on the lookout forward, although the libel charges, that Boon, who had the helm, was on the lookout; but it is quite certain that Lee was negligent and inefficient, not informing the helmsman that the sloop was near by, although he swears that he saw her on her westerly tack. He paid no regard to her subsequent movements, and did not notice her when she came about, nor until she was close by on her easterly tack, his attention being attracted by the movements of Russell in putting up the lights, instead of watching neighboring vessels. Such neglect

to comply with the requirements of law, as to lights and competent lookout, will be visited most severely on the offending party by courts of admiralty in any case where it shall occasion the disaster. Libel dismissed with costs.